**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-02244-CMA-MJW

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD WILMER, and
ROCK WEISS,

Defendants.

---

**ORDER AFFIRMING IN PART AND REJECTING IN PART JANUARY 16, 2013 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This case was referred to United States Magistrate Judge Michael J. Watanabe pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72. (Doc. # 2.) On January 16, 2013, the Magistrate Judge issued a Recommendation (Doc. # 66), advising that the Government's Motion for Summary Judgment (Doc. # 40) be denied. For the reasons discussed below, the Court affirms in part and rejects in part the Magistrate Judge's Recommendation.

## I. BACKGROUND

The Government initiated this action on August 26, 2011, by filing a Complaint seeking to recover costs it incurred in cleaning up the Cherokee Print Shop Wastes Superfund Site, located at 4411 Cherokee Street, Denver, Colorado (the "Site"). The action arises under the Comprehensive Environmental Response, Compensation, and

Liability Act, 42 U.S.C. §§ 9601-9675 (2000) ("CERCLA"). (Doc. # 1.) In the Complaint, the Government alleges that Defendant Rock Weiss is jointly and severally liable with former Co-Defendant Richard Wilmer, for all response costs incurred in connection with the Site.[1] (*Id.*) It alleges that Weiss is liable as an "arranger" under Section 107(a)(3) of CERCLA. In support of its allegations, the Government relies on the following facts, which are taken from the stipulations in the Final Pretrial Order. (Doc. # 62.)

From 1998 until 2006, Weiss owned both a semi-trailer and the print shop liquids it contained. Weiss kept the trailer at a storage facility, and at some point he became delinquent on his contract with the storage facility. In 2006, the storage facility filed suit against Weiss in Arapaho County Small Claims Court and obtained a judicial order requiring him to remove the trailer from the facility. The next week, Weiss sold the trailer, including its contents, in a "five minute transaction" to Wilmer. Weiss and Wilmer did not discuss anything relating to the disposal of the trailer contents, nor did Weiss care what Wilmer did with the contents. Weiss did not attempt to sell the contents of the trailer separately from the trailer itself; in fact, he charged less for the trailer full of print shop liquids than he would have for the trailer by itself. At least some of the print shop liquids contained hazardous substances including lead and carbon tetrachloride.

1 The Government alleged that Wilmer was liable under Section 107(a)(1) and (2) of CERCLA as the owner of the Site where hazardous substances were disposed. After failing to respond to the Complaint, and upon motion of the Government, on February 24, 2012, the Clerk of the Court entered a final default judgment against Wilmer pursuant to Fed. R. Civ. P. 55(b). (Doc. # 32.) The claim against Wilmer will be discussed only as needed to provide background for the outstanding claim against Weiss.

After purchasing the trailer and contents from Weiss, Wilmer parked the trailer at the Site for an extended period of time. In response to City and County of Denver enforcement of local ordinances, prohibiting parking a semi-trailer at a residential property, Wilmer unloaded hundreds of containers of print shop liquids from the trailer and placed them on the Site. He then removed the trailer.

In November 2009, the Site was assessed by United States Environmental Protection Agency ("EPA") personnel who observed that many of the containers were open, leaking, rusting, or dented. On December 11, 2009, an EPA contractor performed a hazard classification on some of the containers, finding that they held hazardous substances within the meaning of CERCLA. In December 2009, EPA personnel contacted both Defendants to determine their willingness and ability to remove the hazardous substances from the Site. After finding that the Defendants could not commit to a timely response plan, EPA issued an Action Memorandum and began to remove all hazardous materials and contaminated soils from the Site. This work was completed in February 2010. EPA incurred response costs in investigating and removing the hazardous substances from the Site consistent with CERCLA's National Contingency Plan, 40 C.F.R. Part 300.

Additionally, the parties have agreed that: Weiss is a "person" within the meaning of Section 101(21) of CERCLA; the Site is a "facility" within the meaning of Section 101(9) of CERCLA; and there were "releases" or the threat of "releases" of "hazardous substances," including ignitable materials, highly acidic and corrosive liquids, lead, and

carbon tetrachloride, into the environment at the Site within the meaning of Sections 101(22) and 101(14) of CERCLA.

The Government filed the underlying Motion for Summary Judgment on May 10, 2012. (Doc. # 40.) Weiss responded on May 31, 2012 (Doc. # 41), and the Government replied on June 13, 2012 (Doc. # 42). Defendant responded to the Government's reply on June 27, 2012 (Doc. # 45) and the Government filed a Sur-Reply on July 2, 2012 (Doc. # 49). The Magistrate Judge issued the Final Pretrial Order on November 27, 2012, which contains the stipulated facts discussed above. (Doc. # 62.)

On January 16, 2013, the Magistrate Judge issued his Recommendation, in which he found that there was a genuine dispute of material fact and therefore recommended that the motion for summary judgment be denied. (Doc. # 66.) On January 30, 2013, the Government objected to the Magistrate Judge's Recommendation. (Doc. # 67.) Defendant has not filed a response.[2]

## II. STANDARDS OF REVIEW

### A. RECOMMENDATION OF THE MAGISTRATE JUDGE

When a magistrate judge issues a recommendation on a dispositive matter, a district court is required to "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

[2] However, Defendant did file a "Motion for Dismissal" on February 12, 2013 (Doc. # 68), to which the Government responded on February 27, 2013 (Doc. # 70). Defendant's motion raises issues clearly in response to the Magistrate Judge's Recommendation and the Government's Objections. (*See* Doc. # 68.) Although Defendant's motion appears by all accounts to be untimely, the arguments it raises have been considered by the Court but add nothing new to the Court's analysis. Ultimately, as discussed below, because a genuine dispute of material fact exists on the issue of "arranger" liability, the Court will deny Defendant's motion as moot.

An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is timely if made within 14 days after the magistrate judge issues his recommendation. *Id*. An objection is sufficiently specific if it "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*. (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). In the instant case, the Government's Objections were both timely and specific, thereby triggering *de novo* review of the matter.

**B. SUMMARY JUDGMENT**

Summary judgment is warranted under Fed. R. Civ. P. 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based

merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adler v Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### C. *PRO SE* DEFENDANT

Finally, because Defendant is proceeding *pro se,* the Court has construed his pleadings more liberally and held them to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The Court, however, cannot act as advocate for Defendant, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

## III. ANALYSIS

The Court has reviewed this matter *de novo*, including carefully considering all relevant pleadings, the Recommendation, and the Government's Objections thereto. Although the Court agrees with the Magistrate Judge that a genuine dispute of material fact precludes entry of full summary judgment, the Court comes to this conclusion for reasons different than those expressed by the Magistrate Judge. Also, the Court disagrees with the Magistrate Judge's implicit conclusion that entry of summary judgment is inappropriate on those elements of liability that are no longer in dispute.

CERCLA is designed to "facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm." *Pub. Serv. Co. of Colo. v. Gates Rubber Co.,* 175 F.3d 1177, 1181 (10th Cir. 1999) (citation omitted). As such, CERCLA authorizes a cause of action to recover the costs, including future costs, a party incurs investigating and remediating a contaminated site. 42 U.S.C. § 9607(a); *Bd. of Cnty.*

*Comm'rs of Cnty. of La Plata, Colorado v. Brown Group Retail, Inc.*, 768 F. Supp. 2d 1092, 1111 (D. Colo. 2011).

Generally, to prevail on a CERCLA claim, the United States must prove that (1) the site is a “facility,” as defined in Section 101(9) of CERCLA; (2) there has been a release or threatened release of a hazardous substance from the site; (3) the release or threatened release has caused the United States to incur response costs; and (4) the defendant is a “covered person” under Section 107(a). *United States v. Hardage*, 761 F. Supp. 1501,1508 (W.D. Okla. 1990). Section 107(a) identifies four categories of “covered persons” who are potentially liable under the statute, including those who “arrange for” the disposal of hazardous substances. 42 U.S.C. § 9607(a)(3). In pertinent part, Section 107(a)(3) provides that “any person who by contract, agreement, or otherwise arranged for disposal . . . of hazardous substances owned or possessed by such person . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan.” 42 U.S.C. § 9607(a).

The stipulated facts of this case have established three of the four elements, *i.e.*, that the Site is a “facility” as defined under CERCLA, that there has been a release or threatened release of hazardous substances from the Site, and that the release or threatened release has caused the United States to incur response costs. (Doc. # 62,

¶¶ 22, 25, 26.) As such, summary judgment on these elements is appropriate. However, a genuine dispute exists as to whether Weiss is a "covered person" under CERCLA.

The Government asserts that it is entitled to summary judgment because Weiss admitted to selling a trailer containing print shop liquids, some of which were hazardous, to Wilmer, who then unloaded onto the Site the containers, the contents of which were released or threatened to be released into the environment. (Doc. # 62, ¶¶ 4, 7, 26, 27.) The Government contends these facts prove that Weiss is a "covered person" under Section 107(a)(3) because he "arranged" for the disposal of hazardous substances and is, therefore, liable for the costs of cleaning up the Site as an "arranger." It further contends that the question of whether Weiss is an "arranger" under CERCLA is clear and does not require the Court to reach any novel issues in interpreting the scope of arranger liability.

In response, Weiss disputes the Government's characterization of the sale and argues that he did not intend for the disposal of hazardous materials under the meaning of CERCLA and, therefore, cannot be found liable as an arranger. Section 101(29) of CERCLA defines "disposal" by reference to the Solid Waste Disposal Act as:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903. To support his argument, Weiss cites two instances in which courts have analyzed whether a plaintiff must establish that the defendant had specific intent to dispose of hazardous substances. *See Burlington Northern Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009); *see also Morton Intern., Inc., v. A.E. Staley Mfg. Co.*, 343 F.3d 699, 679 (3rd Cir. 2003) (discussing the intent element before focusing on the factors of ownership, knowledge of disposal, and control over the disposal process to determine arranger liability).

The Supreme Court has noted that specific intent is required for arranger liability in at least some instances. *Burlington Northern*, 556 U.S. at 610. In *Burlington Northern*, the Court explained that the statute does not define what it means to "arrang[e] for" disposal of a hazardous substance and therefore gave the phrase its ordinary meaning, which implies "action directed to a specific purpose." *Id.* The Court noted that liability would clearly attach when "the sole purpose" of the transaction was to discard "a used and no longer useful hazardous substance." *Id*. Conversely, the Court noted that "[i]t is similarly clear that an entity could not be held liable as an arranger for merely selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id*. The Court further explained, "[l]ess clear is the liability attaching to the many permutations of 'arrangements' that fall between these two extremes – cases in which the seller has some knowledge of the buyers' planned disposal or whose motives for the 'sale' of a hazardous substance are less than clear." *Id*.

The facts of the current case fall somewhere in this middle ground. It is unclear whether, at the time of Weiss's sale to Wilmer, the print shop liquids were useful hazardous materials or instead merely hazardous waste. If the print shop liquids were useful hazardous materials, *Burlington Northern* would require the Government to prove that Weiss had the specific intent to dispose of them. 556 U.S. at 610. However, if the Government proves that the print shop liquids were hazardous wastes, whether it would be required to further establish that Weiss had the specific intent to dispose of them remains an open question. *Compare United States v. Gen. Elec. Co.*, 670 F.3d 377, 387 (1st Cir. 2012) (holding that the defendant had the requisite intent to dispose of hazardous waste and was therefore liable as an "arranger" under CERCLA); *and United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1231 (6th Cir. 1996) (acknowledging the "indispensable role that state of mind must play in determining whether a party has otherwise arranged for disposal . . . of hazardous substances" (internal citations omitted)); *and Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F. Supp. 651, 654 (N.D. Ill. 1988) *aff'd*, 861 F.2d 155 (7th Cir. 1988) (liability attaches only to parties who transact in order to dispose of a hazardous substance); *with Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 343 F.3d 669, 679 n.6 (3rd Cir. 2003) ("specific intent or at least specific knowledge of the waste disposal . . . is higher than the general knowledge level we require"); *and South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 407 (11th Cir. 1996) (while "a party's knowledge of the disposal . . . and intent are relevant to determining whether there has been an 'arrangement' for disposal, they are not

necessarily determinative"). At this stage in the proceedings it is not clear what evidence, if any, exists to show that Weiss intended Wilmer's eventual disposal of the liquids, and Weiss's motive for the "sale" is disputed by the parties. In such situations, "the determination [of] whether an entity is an arranger requires a fact-intensive inquiry that looks beyond the parties characterization of the transaction as a 'disposal' or a 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions."[3] *Id.*

Accordingly, the Court finds that a genuine dispute of material fact remains as to the nature of the "sale": principally whether the print shop liquids were useful hazardous products or waste when sold, and whether Weiss had the requisite intent to dispose of the materials within the meaning of CERCLA.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the Recommendation of United States Magistrate Judge Michael J. Watanabe (Doc. # 66) is AFFIRMED IN PART and REJECTED IN PART. Pursuant to the Recommendation, it is

FURTHER ORDERED that the Government's Motion for Summary Judgment (Doc. # 40) is DENIED IN PART as to the issue of "arranger" liability and GRANTED IN PART in all other respects. It is

[3] As such, the Court attaches no special significance to the stipulation that Weiss "discounted the price of the trailer contents to dispose of them with the semi-trailer." (Doc. # 62 at 4.)

FURTHER ORDERED that, in light of the foregoing analysis, Defendant's "Motion for Dismissal" (Doc. # 68) is DENIED AS MOOT.

DATED: March __07__, 2013

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge