**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 11-cv-02244-RM-MJW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROCK WEISS,

    Defendant.

---

**ORDER ENTERING CONSENT DECREE**

---

    The United States of America commenced this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking to recover costs it incurred in cleaning up the Cherokee Print Shop Wastes Superfund Site, located at 4411 Cherokee Street, Denver, Colorado (the "Site"). In the Complaint (ECF No. 1), the Government alleges that Defendant Rock Weiss is jointly and severally liable with former Co-Defendant Richard Wilmer for all response costs incurred in connection with the Site.

    On September 20, 2013, the Government requested that this Court approve the consent decree and filed an Unopposed Motion (ECF No. 133) to that end. For the reasons explained below, the Motion is GRANTED and the consent decree is APPROVED.

    **I.    JURISDICTION AND BACKGROUND**

    Plaintiffs have filed claims under 42 U.S.C. § 9607. Accordingly, jurisdiction in this Court is not only proper, it is mandatory. 42 U.S.C. § 9613(b); *see also* 28 U.S.C. § 1331.

Because the alleged actions and resultant damages occurred in this district, venue in this court is also proper. *Id*.; *see also* 28 U.S.C. § 1391(b) and (c).

### A. Facts

The United States of America (the "Government"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this matter pursuant to Section 107 of CERCLA, seeking reimbursement of response costs incurred in connection with the release or threatened release of hazardous substances at the Site. Mr. Weiss has entered into a Proposed Consent Decree with the Government, but he does not admit any liability arising out of the events alleged in the Complaint.

The Complaint alleges that Mr. Weiss owned a semi-trailer filled with various containers of screen printing materials, including hazardous substances. Mr. Weiss advertised the semi-trailer for sale on Craigslist in 2006, seeking $900.00 for the trailer alone, and a reduced price of $600.00 for the trailer with contents. Defendant Wilmer responded to the advertisement and purchased the trailer and its contents for $600.00. Defendant Wilmer later unloaded the contents of the trailer at the Site, and then removed the trailer from the property. Mr. Weiss, doing business as Accu Press, owned the contents of the trailer that were disposed of on the Site, including the hazardous substances.

In November of 2009, the Denver Fire Department and Denver Department of Environmental Health requested EPA's assistance in assessing conditions at the Site. On December 28, 2009, EPA issued an Action Memorandum, selecting a removal action to address the releases and threatened releases of hazardous substances at the Site. The removal action constituted securing the Site, identifying the waste streams and removing all containers and contaminated soils for final disposal. EPA completed the removal in February 2010. The total

costs incurred by the Government in cleaning up the site, including both direct and indirect costs, was $70, 293.70.[1]

### B.  Procedural History

Default Judgment was entered against Defendant Wilmer on November 23, 2012.  (ECF No. 13.)  Mr. Weiss proceeded *pro se* for approximately the first two years of litigation until April 1, 2013, when *pro bono* counsel entered an appearance.  (ECF Nos. 97, 98, 99.)  Trial was scheduled for April 1, 2013 and rescheduled to August 21, 2013 after a continuance was granted by the Court.  (ECF No. 91.)  A stay of the proceedings was granted on June 28, 2013 (ECF No. 128) to allow for ongoing settlement negotiations.  A proposed Consent Decree was lodged with the Court on August 1, 2013 (ECF No. 129) and an additional stay in the proceedings was granted.  (ECF No. 132.)

In accordance with 28 C.F.R. § 50.7, notice of the lodging of the proposed Consent Decree was published in the Federal Register on August 7, 2013.  *See* 78 Fed. Reg. 48192.  The notice invited the public to comment on the proposed settlement within a period of 30 days.  *See id*.  No comments were received.

## II.     LEGAL STANDARD

"A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating."  *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-529 (1986).  A consent decree that is entered in federal court "must be directed to protecting federal interests."  *Frew v. Haskins*, 540 U.S. 431, 437 (2004).  In *Firefighters*, the Supreme Court said that a federal consent decree must: (1)

---

[1] The Government originally estimated its costs to be in the amount of $128,850.09, but updated that amount downward in February 2012 with an affidavit by a Certified Public Accountant.  *See* ECF No. 40 at 2.

spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case based on the pleadings; and (3) further the objectives of the law on which the claim is based.  478 U.S. at 525.

A district court may either approve or deny the issuance of a consent decree; however, it is "not entitled to change the terms of the agreement stipulated to by the parties." *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991).  If deficiencies are found, it is proper for the district court to advise the parties of its concerns and allow them to submit a revised decree.  *See id*.

Because a consent decree bears the imprimatur of judicial approval, a district court "must ensure that he agreement is not illegal, a product of collusion, or against the public interest." *Id*. A district court must also determine that the decree is "fair, adequate, and reasonable before it is approved." *Id*., *see also United States v. Telluride Co*., 849 F.Supp. 1400, 1402 (D. Colo. 1994) (stating that the relevant standard is whether the proposed decree "is fair, reasonable and equitable and does not violate law or public policy.").

Fairness contains both procedural and substantive components.  *United States v. Cannons Eng'g Corp*., 899 F.2d 79, 86 (1st Cir. 1990).  "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance."  *Id*.  A substantively fair consent decree incorporates "concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible."  *Id*. at 87.  Substantive fairness overlaps with the requirement that the decree be equitable.  *See Colo. v. City & Ctny. Of Den*., No. 10-cv-1303, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010); *WildEarth Guardians v. Jackson*, Nos. 11-cv-00001, 11-cv-00743, 2011 WL 4485964, at *4 (D. Colo. Sept. 27, 2011).

In determining whether the Proposed Consent Decree is reasonable, the Court must consider such factors as whether the decree is in the public interest and upholds the objectives of CERCLA, whether the decree is technically adequate to accomplish the goal of cleaning the environment, and whether it reflects the relative strength or weaknesses of the settling party's position. *See United States v. Kerr-McGee Corp.*, No. 07-cv-010134, 2008 WL 863975, at *5 (D. Colo. Mar. 26, 2008); *WildEarth Guardians*, 2011 WL 4485964, at *4. "Overlaid on this evaluation is the most important factor: whether the consent decree is in the public interest and upholds the objectives of CERCLA's resource damage provisions, chief among which is the 'restoration or replacement of natural resources damaged by unlawful releases of hazardous substances.'" *Colo.*, 2010 WL 4318835, at *4 (*quoting New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1245 (10th Cir. 2006)).

In conducting its analysis, a district court must keep in mind the strong policy favoring the voluntary settlement of disputes. *Id.* Judicial deference to settlements is particularly strong where the consent decree has been negotiated by the EPA, "which enjoys substantial expertise in the environmental field." *Id.* Thus, although "a district may not simply rubber stamp a consent decree, it 'must defer heavily to the parties' agreement and the EPA's expertise.'" *Id.* (quoting *United States v. Charles George Trucking*, 34 F.3d 1081, 1085 (1st Cir. 1994).

### III.   ANALYSIS

The Government filed a Proposed Consent Decree which requires Defendant Weiss to pay $600.00 to the United States in reimbursement of responses costs. The Proposed Consent Decree stipulates that the interest shall be calculated from the date of entry of the consent decree through the date of payment. (ECF No. 129-1 at 7.) According to the Proposed Consent Decree, if any amount due to EPA is not paid by the required date, Mr. Weiss shall be in violation of the

consent decree and shall pay as a stipulated penalty, in addition to the interest required, $50 per violation per day that such payment is late.

The proposed Consent Decree provides Settling Defendant with a covenant not to sue under Section 107(a) of CERCLA for response costs. Settling Defendant will also receive contribution protection pursuant to Section 113(f)(2) of CERCLA. The Government reviewed the Financial Information submitted by Mr. Weiss to determine whether he was financially able to pay the response costs incurred at the Site.

CERCLA Section 122(g)(7)(b) permits reduced settlement amounts where a person's ability to pay response costs is limited, upon consideration of their overall financial position and demonstrable constraints on the person's ability to raise revenues. As the Unopposed Motion to Enter Consent Decree states, "[t]he $600.00 payment reflects [Mr. Weiss's] limited ability to pay response costs…[Mr. Weiss] provided financial documents to the United States demonstrating his limited ability to pay response costs." (ECF No. 133 at 4.)

In evaluating the proposed consent decree, this Court must balance a number of competing concerns. First, I am mindful of the policy encouraging settlements. This policy "has even more force where 'a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement.'" *Colo.*, 2010 WL 4318835, at *4 (quoting *Cannons*, 899 F. 2d at 84). Second, I may not "merely imprint [the parties'] decision as though possessed of a clerical rubber stamp." *Telluride*, 849 F.Supp. at 1402. In suits affecting the public interest, my review must be thorough. *See Colo.*, 2010 WL 4318835, at *4 (citing *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2nd Cir. 1986). However, I do not substitute my judgment of what constitutes an appropriate settlement or attempt to reform the decree. *Telluride*, 849 F.Supp. at 1402 (citing *United States v. Akzo Coatings of Am., Inc.*, 949

F.2d 1409, 1409 (6th Cir. 1991)). The relevant standard is whether the Proposed Consent Decree is fair, reasonable, and equitable and does not violate law or public policy. *Id*. I will evaluate the Proposed Consent Decree according to the standards laid out above.

I find the Proposed Consent Decree is both procedurally and substantively fair. The decree resulted from extensive arms-length negotiation between two represented parties. The Government was represented by counsel from the Department of Justice and EPA with expertise in environmental law and specifically in CERCLA, and was advised by technical staff with extensive Site knowledge. (ECF No. 133 at 9.) Mr. Weiss was represented by counsel that advocated on his behalf for a settlement that recognized his limited ability to pay and secured an extended time period for repayment. (*Id*. at 10.) The parties engaged in a meaningful process aimed at reaching a resolution which balanced the interests of the public against the uncertainty of litigation. There is nothing in the record that would cause me to suspect that these negotiations were anything but candid and in good faith; the proposed consent decree is fair.

The Court also finds that the Proposed Consent Decree is adequate and reasonable. The removal action has already been completed, the public is compensated by the Proposed Consent Decree to the degree practicable, and the Proposed Consent Decree reflects the strength of the Government's case under CERCLA. (ECF No. 133 at 10-11.)

Although the ultimate settlement amount is limited, the Government reasonably determined that the settlement adequately compensated the public—especially when weighed against the costs and time of litigation, and in consideration of the financial resources of Mr. Weiss. In light of these concerns, the settlement amount sufficiently compensates the public for reasonably certain natural resource damages resulting from contamination at the Site; it is therefore substantively fair and equitable.

The Proposed Consent Decree is lawful. It was entered into pursuant to statutory authority delegated to officials at the U.S. Department of Justice and EPA. The Proposed Consent Decree is consistent with the underlying policies and purposes of CERCLA. In addition, the public was given notice and 30 days to comment on the Proposed Consent Decree, and there were no public comments received in response to the notice.

## IV. CONCLUSION

For the reasons set forth above, the Court finds the Proposed Consent Decree fair, reasonable, consistent with the purpose of CERCLA, and in the public interest. Accordingly, the Court ORDERS as follows:

1. United States' Unopposed Motion to Enter Consent Decree (ECF No. 133) is GRANTED;

2. The Proposed Consent Decree is APPROVED;

3. The Clerk of the Court is directed to close this case.

DATED this 6th day of November, 2013.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge